IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KAROL FELISHA LONGMIRE, ) | Case No. 21-10503-JCO |
| ) | Chapter 13 |
| Debtor. ) | |

## MEMORANDUM ORDER AND OPINION

This matter came before this Court on the Debtor's Motion to Approve Settlement (doc. 31), and the Response of Nissan Motor Acceptance Corporation ("Nissan"), as supplemented and amended. (Docs. 34, 40, 48). Proper notice of hearing was given and appearances were noted on the record. Based on the record, pleadings, and statements of counsel at the hearing, this court finds that the Motion to Approve Settlement is due to be CONDITIONALLY GRANTED, with $9995.50 to be applied to Nissan's allowed secured claim, $1964.24 to be held in trust pending conclusion of the case, and Nissan retaining the GAP Agreement Funds for the following reasons:

## JURISDICTION

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

1

## PROCEDURAL HISTORY AND FACTS

On or about August 31, 2018, the Debtor, Karol Longmire ("Longmire") entered into a Retail Installment Contract ("Purchase Contract") with Nissan Motor Acceptance Corp. ("Nissan") for the purchase of a new 2018 Nissan Altima ("Altima"). (ECF Claim 5-1 at 6). Under the Purchase Contract Longmire granted Nissan, "a security interest under Alabama law in the vehicle and all parts and accessories which now or hereafter constitute accessions to the vehicle and in all proceeds of such vehicle and accessions." (*Id.* at 8 ¶B). Nissan timely perfected its security interest as evidenced on the certificate of title to the Altima. (*Id.* at 10).

Along with execution of the Purchase Contract the Debtor elected to enter into a Guaranteed Asset Protection Agreement ("Agreement").(Doc. 55). The Agreement provides in part:

> . . . This Agreement is between the Buyer . . . and the Selling Dealer, who is the "Creditor" at the time of sale of the Vehicle. If Your Finance Contract is assigned by the Selling Dealer to a financial institution, the Selling Dealer will no longer be a party to this Agreement, and this Agreement will be between You and the assigned financial institution or its successor in interest, which is the Creditor following such assignment . . .

(Doc. 55 at 4).

> . . . In return for the payment of the GAP Agreement Cost and subject to the terms, limitations, exclusions and conditions of the Agreement, the Creditor hereby agrees to waive or cancel the difference between the Actual Cash Value and the Net Balance in the event of a Total Loss of Your Vehicle within the United States, as these terms are defined in this Agreement. There is no GAP protection under this Agreement if the Actual Cash Value of Your Vehicle on the Date of Loss is greater than or equal to the Net Balance . . .

(*Id.* at 5).

> . . . In the event of waiver under this Agreement, You agree that Creditor and Administrator acting on its behalf, shall be subrogated to all rights of recovery You have against any person to the extent of the amount waived.

(*Id.* at 6 ¶9).

Longmire filed this Chapter 13 bankruptcy on March 15, 2021. Her plan proposed to pay $10,600.00 of Nissan's claim as secured with 5.25% interest with the remainder of the debt unsecured. (Doc. 28). Nissan filed a proof of claim evidencing its perfected security interest and outstanding debt of $26,231.11 on the Altima.(ECF Claim 5-1). The Altima was later wrecked and declared a total loss. (Doc. 31 ¶3). On or about April 11, 2022, Nissan received $11,959.74 from the Debtor's general insurance policy ("Primary Insurance"). (Doc. 40 at 1¶2). At that time, $9995.50 was owed on the secured portion of Nissan's claim. (*Id.*) Then on or about May 12, 2022, Nissan received additional funds of $5113.51 ("GAP Funds") as loss payee of the GAP Agreement policy. (*Id.* ¶ 3).

There is no dispute as to the reasonableness of the settlement with the Primary Insurance carrier and no objection to the approval of the Motion to Compromise in that respect. The issue presented is who has a right to receive the funds. Nissan seeks approval to use the Primary Insurance to pay its allowed secured claim and hold the remainder of $1964.24 ("Excess Proceeds") in escrow until the Debtor receives a discharge or the case is dismissed. Nissan further requests to apply the GAP Funds to the remaining debt. Longmire does not dispute that Nissan's allowed secured claim should be paid from the Primary Insurance but requests that the Excess Proceeds and GAP Funds be remitted to her for the purchase of a replacement vehicle.[1] (Doc. 31). This matter was reset several times to allow for the production of documents. Nissan provided fully executed copies of the Retail Installment Contract (ECF 5-1 at 6-10) and GAP Agreement. (Doc. 55). The Debtor did not submit any other documentation and no testimony was taken.

---

[1] Longmire's counsel indicated at the hearing that she does not seek to substitute collateral. Thus, this court understands that Longmire wishes to receive the Excess Proceeds and GAP Funds to apply toward the purchase of another vehicle without granting Nissan any lienholder interest.

ANALYSIS

Disposition Of The Primary Insurance Proceeds

Under certain circumstances, Chapter 13 Debtors may bifurcate ("cram down") a secured debt by proposing to pay a value less than the amount of a creditor's total claim and treat the remaining debt as unsecured.[2] *11 U.S.C.§1322(b)(2); 11 U.S.C. 506(a)(1)*. Under Section 1325 of the Bankruptcy Code, the holder of the "crammed down" claim retains its lien on the secured collateral until the earlier of the payment of the underlying debt determined under non-bankruptcy law; or discharge. 11 U.S.C.§1325(a)(5). Thus, absent a discharge, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect. *In re Colbourne* 550 Fed. Appx. 687 (11th Cir. 2013).

Under Alabama law, a secured party's lien attaches to proceeds resulting from the loss of its collateral. *Ala. Code* §7-9A-203(f). Additionally, §522 of the Bankruptcy Code provides that creditors ordinarily retain their security interest in the post-petition proceeds of their pre-petition collateral. S*ee In re Coker*, 216 B.R. 843 (Bankr. N.D. Ala.)(noting that a creditor holding a security interest in a vehicle when the debtor filed bankruptcy retained that same security interest in the insurance proceeds "cash collateral" realized from the total loss).

The Record reflects that Nissan held a perfected security interest in the Altima and the Purchase Agreement extended Nissan's interest to " all proceeds of such vehicle and accessions". Thus, under applicable law Nissan's lien attached to the insurance proceeds upon the destruction of its collateral. There is no dispute that Nissan is entitled to have the secured component of its

---

[2] A debtor's ability to bifurcate a secured claim is not absolute. For instance, chapter 13 debtors cannot modify the rights of holders of secured claims secured only by a security interest in real property that is the debtor's principal residence or a claim of a creditor holding a purchase money security interest in an automobile acquired for the debtor's personal use within 910 days preceding the petition. *See 11 U.S.C. §1322 (b)(2)* and *11 U.S.C. §1325(a).*

4

claim paid. This will leave $1964.24 in Excess Proceeds from the Primary Insurance coverage and reduce Nissan's contractual balance to approximately $15,067.15.[3] However, because the Debtor's plan "crammed down" Nissan's claim and neither requirement of §1325(a)(5) has been met[4], the disposition of the Excess Proceeds cannot be finally adjudicated until the conclusion of the case. If Longmire completes the plan and receives a discharge, she will be entitled to the Excess Proceeds and Nissan will have to release its lien. Conversely, if this bankruptcy case is converted or dismissed, Nissan will be entitled to the Excess Proceeds as lienholder under non-bankruptcy law. Therefore, this court directs Nissan's counsel of record, Spina and Lavelle, P.C., to hold the Excess Proceeds in trust until the appropriate party to receive them can be determined.

Entitlement To The GAP Funds

A contractual agreement that is plain and free from ambiguity must be enforced as written. *Sentinel Ins. Co. v. Alabama Mun. Ins. Corp.*, 188 So.3d 640, 644 (Ala. 2015); *In re Colonial BancGroup, Inc.,* 436 B.R. 713, 730 (Bankr. M.D. Ala 2010); *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 697 (Ala. 2003). A contract is ambiguous only if, when considering its ordinary meaning, it is reasonably susceptible to different constructions. *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1144 (Ala. 2005). The court may not rewrite or revise a contract under the guise of construing it. *Fernandes v. Manugistics Atlanta*, 261 Ga.App. 429, 433, 582 S.E.2d 499 (2003). Thus, bankruptcy courts construing GAP Agreements have concluded that neither the debtor nor the estate was entitled to receive GAP Funds. *In re Alvarez*, 605 B.R. 716 (Bankr. D. S.C. 2019)(denying debtor's request to use GAP proceeds when the GAP Agreement only provided for

---

[3] This calculation is deduced from Exhibit A to Nissan's Supplement to Response. (Doc. 40).
[4] This Court recognizes that this District has previously allowed excess insurance funds to be used by the Debtor for a replacement vehicle. *See In re Perine*, 2021 WL 3563574 (Bankr. S.D. Ala. 2021). That said, the facts of this case are distinguishable because not only has the creditor objected but Longmire is at a much earlier stage of the plan.

waiver of the unpaid balance); *In re Doud*, 2018 WL 3098687 (Bankr. E.D. Ky. 2018)(holding that neither the debtor nor the estate had an interest in GAP benefit funds because they are not proceeds of the vehicle but rather a payment that became due under a separate contract); *see also In re Edgeworth*, 993 F. 2d 51, 55(5th Cir. 1993)(finding that the proceeds of a liability policy were not property of the estate because the debtor did not have a right to receive and keep those proceeds when the insurance paid on the claim).

A review of the Agreement in this case does not support Longmire's claim to the GAP Funds. The plain language of the Agreement unambiguously provides that the creditor agreed to waive or cancel the difference between the actual cash value and the net balance upon a total loss of the Altima. Notably absent from the Agreement is any provision providing for payment directly to Longmire. The limited nature of the Agreement is further evidenced by the fact that there is no protection if the actual cash value of the vehicle on the date of loss is greater than or equal to the net balance. The Agreement even provides that the creditor is subrogated to the debtor's rights of recovery in the event of loss. Consequently, it is clear that Longmire did not retain the right to directly collect from any underlying policy or third party. Longmire simply acquired the benefit of protection from the risk of owing a deficiency balance upon a total loss, nothing more and nothing less. This court agrees with the reasoning of *In re Alvarez* and *In re Doud* holding that neither the debtor nor the estate acquires any interest in the GAP Funds because they are not proceeds of the vehicle but rather a payment that became due under a separate contract. Therefore, Longmire is not entitled to receive the GAP Funds but is entitled to a waiver of the deficiency balance.

6

Case 21-10503    Doc 62    Filed 11/22/22    Entered 11/22/22 12:28:55    Desc Main
Document      Page 6 of 7

## CONCLUSION

Based on the foregoing, it is hereby ORDERED, ADJUDGED, and DECREED that the Debtor's Motion to Approve Settlement (doc. 31) is CONDITIONALLY GRANTED as follows:

1. The Settlement with the General Primary Insurance Company in the amount of $11,959.74 is APPROVED;
2. Nissan's remaining allowed secured claim in the amount of $9995.50 shall be paid from the Settlement Amount;
3. The Excess Funds of $1964.24 shall be held in trust by Nissan's counsel of record, Spina and Lavelle, P.C., until appropriate disposition can be determined;
4. Nissan may retain the GAP FUNDS for application toward the remaining unsecured portion of its claim; and
5. Nissan must waive any remaining deficiency balance and amend its claim accordingly.

Dated: November 22, 2022

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE